**Justin Lee MAY, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

No. 91–6239.

United States Court of Appeals, Fifth Circuit.

Nov. 23, 1991.

Certiorari Denied Jan. 13, 1992.
See 112 S.Ct. 907.

---

**164**

Barbara Lowe, Houston, Tex., Francis M. Gregory, Jr., David T. Shelledy, Willard K. Tom, Sutherland, Asbill & Brennan, Washington, D.C., for petitioner-appellant.

Dan Morales, Atty. Gen., Austin, Tex., for respondent-appellee.

Before KING, JOLLY and SMITH, Circuit Judges.

KING, Circuit Judge:

Justin Lee May, a Texas prisoner, is scheduled to be executed before dawn on November 26, 1991. In this, his second federal habeas petition, he contends that the Texas capital sentencing statute, as applied at the time of his trial, deprived him of his Sixth Amendment right to counsel by forcing his counsel to make a tactical decision to withhold mitigating evidence of brain damage, mental impairment and physical abuse as a child. We agree with the district court that this claim amounts to no more than an attempt to relitigate an issue already decided against May, and, accordingly, we deny his application for a certificate of probable cause to appeal and deny a stay of execution.

## I. FACTS AND PROCEDURAL HISTORY

In 1985, May was found guilty in a Texas court of the murder of Jeanetta Murdaugh and sentenced to death. A full recital of the facts may be found in the opinion of the Texas Court of Criminal Appeals affirming his conviction and sentence on direct appeal, *May v. State*, 738 S.W.2d 261 (Tex.Crim.App.), *cert. denied*, 484 U.S. 872,

1. May abandoned an ineffective assistance of counsel claim on appeal. *May*, 904 F.2d at 231

108 S.Ct. 206, 98 L.Ed.2d 158 (1987), and in this court's denial of his first petition for habeas corpus, *May v. Collins*, 904 F.2d 228 (5th Cir.1990) (per curiam), *cert. denied*, —— U.S. ——, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991). The latter also contains a review of the procedural history to that point. We repeat here only as necessary for a full understanding of the issues presented in this appeal.

In the penalty phase of the trial, May introduced as mitigating evidence the testimony of Ralph Price, a work supervisor during a prior incarceration, and Betty Bevel, May's sister. Price testified to May's good work attendance, his ability to follow instructions, and his lack of disciplinary problems. Bevel testified that she visited May for a week in 1984 while May was on furlough from prison and that he displayed no violent tendencies during that time. The jury answered in the affirmative the Texas capital sentencing statute's special issues on deliberateness and future dangerousness, and sentenced May to death. Tex.Code Crim.Proc.Ann. art. 37.-071(b)(1)–(2), (e) (Vernon 1991).

After the denial of relief on direct appeal and state habeas, May filed a petition for habeas corpus in federal court raising seven claims for relief. The district court denied all relief, and May pursued six of those claims on appeal.[1] One claim was that

> May's Eighth Amendment rights were violated because the Texas sentencing procedures prevented full consideration of the mitigating value of May's good character evidence and inhibited the presentation of evidence regarding May's mental impairment and long history of child abuse.

*May*, 904 F.2d at 230. In support of this claim, May presented the affidavit of Dr. James Merikangas, a neurologist and psychiatrist, who had examined May on December 16, 1987. Dr. Merikangas's affidavit indicated that May's birth followed a

n. 3.

complicated pregnancy, during which his mother was extremely ill and medicated for approximately six weeks; that May was frequently abused as a child by his father, who beat him with coat hangers, belts and extension cords; that he had been beaten on at least one occasion to unconsciousness; that he received head injuries in a car accident in 1975; and that May is an alcoholic and has suffered alcoholic blackouts. Dr. Merikangas concluded that May had suffered "demonstrable and significant brain neurological brain damage," that May's "impulse control is substantially impaired by neurological brain damage," and that the trauma and injuries he suffered as a child "may have caused impairment in his social functioning and emotional development, and have substantially impaired his ability to reflect on the appropriateness of his actions before manifesting them."[2] In further support of this claim May's trial counsel submitted an affidavit stating that this evidence was withheld from the jury because of concerns that it would lead the jury to find adversely to May on the question of future dangerousness.

May's claim was that, because he could not be assured that the jury would be instructed that they could use evidence of mental impairment and child abuse for purposes not directly relevant to the special issues, he was precluded from developing evidence which would have detracted from his culpability for the crime. This claim anticipated, in part, the Supreme Court's holding in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), that the Texas capital sentencing scheme was applied unconstitutionally when, after evidence of a defendant's mental retardation was introduced, the jury was not instructed that they could consider the mitigating value of this evidence separate and apart from its connection to the special issues. However, unlike the defendant in *Penry*, May never introduced the mitigating evidence he contended the jury should have had an opportunity to consider, but made a tactical decision to withhold it. Although the con-

stitutional requirement of an instruction guiding the jury's consideration of the defendant's mitigating evidence was not established at the time of May's trial, it was clear that May could have introduced the mitigating evidence if he so chose. *May*, 904 F.2d at 232; *see Jurek v. Texas*, 428 U.S. 262, 272, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976) (upholding Texas death penalty statute as facially constitutional because it had been construed to permit introduction of "particularized mitigating factors"). Therefore, we rejected the Eighth Amendment claim.

> May ... made a tactical decision to neither develop nor present this evidence at trial. We have previously ruled that a defendant's deliberate failure "to introduce mitigating evidence as a tactical decision ... does not come within the requirements announced in *Penry*." *De-Luna v. Lynaugh*, 890 F.2d 720, 722 (5th Cir.1989) ...

*May*, 904 F.2d at 232 (additional citations omitted).

Following our decision, May petitioned for rehearing and rehearing *en banc*, both of which were denied on July 16, 1990. The Supreme Court denied *certiorari* on January 14, 1991. *May v. Collins*, —— U.S. ——, 111 S.Ct. 770, 112 L.Ed.2d 789 (1991). May's execution was then scheduled for April 30, 1991. May filed a second state habeas petition on April 18. On April 23, the trial court entered findings of fact and conclusions of law and recommended that relief be denied. The Texas Court of Criminal Appeals stayed May's execution on April 25 pending consideration of the appeal. On October 15, the court denied relief on the basis of the trial court's findings and vacated the stay of execution. *Ex parte May*, No. 17,992–02 (Tex.Crim.App. Oct. 15, 1991). May's execution was rescheduled for November 26.

On November 15, May initiated the present action in federal court, alleging as the sole ground for relief the violation of his Sixth Amendment right to effective as-

---

**2.** For a more complete account of Dr. Merikangas's affidavit and conclusions, see the panel

opinion in *May*, 904 F.2d at 231.

sistance of counsel as a result of the Texas capital sentencing scheme's failure to assure an instruction on the uses of mitigating evidence. May again submitted the affidavits of Dr. Merikangas and trial counsel in support of this claim. On November 18, the district court issued an opinion in which it characterized May's claim as simply a recasting of the Eighth Amendment claim which had been denied in May's first federal habeas petition. The court considered itself "bound by the Supreme Court's decision in *Penry*, and by applicable Fifth Circuit case law, most notably its previous decision in May's first federal habeas proceeding." The court accordingly denied the writ, denied a stay of execution, and denied a certificate of probable cause to appeal.

## II. ANALYSIS

### A. *Certificate of Probable Cause to Appeal*

■ Because the district court denied a certificate of probable cause to appeal, we have no jurisdiction to decide May's appeal unless we first decide to grant one. Fed.R.App.P. 22(b). To obtain a certificate of probable cause, May must "make a 'substantial showing of the denial of [a] federal right.'" *Barefoot v. Estelle*, 463 U.S. 880, 893, 103 S.Ct. 3383, 3394, 77 L.Ed.2d 1090 (1983) (quoting *Stewart v. Beto*, 454 F.2d 268, 270 n. 2 (5th Cir.1971), *cert. denied*, 406 U.S. 925, 92 S.Ct. 1796, 32 L.Ed.2d 126 (1972)); *Jones v. Whitley*, 938 F.2d 536, 539 (5th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 8, — L.Ed.2d — (1991). That is, he "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot*, 463 U.S. at 893 n. 4, 103 S.Ct. at 3394 n. 4 (citations omitted); *see Sawyer v. Whitley*, 945 F.2d 812, 815 (5th Cir.1991) (granting CPC because case

"presented a question which is debatable among jurists of reason"), *cert. granted*, — U.S. —, 112 S.Ct. 434, 116 L.Ed.2d 453 (1991).

■ Our analysis of May's present petition convinces us that May's attempt to advance a Sixth Amendment claim as a result of the operation of the Texas capital sentencing scheme at the time of May's trial amounts to no more than a reargument of the Eighth Amendment claim that was considered and rejected in his first round of federal habeas. Because May has presented the same claim which was earlier determined on the merits, the district court was correct to dismiss the petition. Rule 9(b) of the Rules Governing § 2254 Cases.

### B. *Availability of a Sixth Amendment Claim Following* Penry

May goes to great lengths to distinguish the Sixth Amendment claim presented in his present petition from the Eighth Amendment claim decided against him in his first federal petition.[3] He relies on the principle, reiterated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), that "government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686, 104 S.Ct. at 2063. He argues that the Texas scheme affected counsel's decision-making ability in much the same fashion as the rule, struck down in *Brooks v. Tennessee*, 406 U.S. 605, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972), which required a defendant in a criminal trial to testify first or not at all. We find his attempt to invoke the Sixth Amendment unconvincing.

■ In *Strickland* and *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), the Court discussed the two general ways in which a defendant can be denied the effective assistance of counsel. The first involves the actual or con-

---

**3.** If the Sixth Amendment claim were indeed a separate claim, May would face the daunting problem of writ abuse as now defined in *McCleskey v. Zant*, — U.S. —, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). However, because we do not conceive of this petition as presenting a new claim, but rather the same claim under a different name, we do not reach the *McCleskey* analysis.

structive denial of any counsel, and arises when counsel is either totally absent or is prevented by surrounding circumstances from providing the effective assistance the Sixth Amendment contemplates. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047; *Strickland*, 466 U.S. at 692, 104 S.Ct. at 2067. These denials of counsel are legally presumed to result in prejudice to the defendant. *Id.* The second involves a performance which is so far below the standard of attorney competence that the defendant can point to the actual prejudice caused by counsel's errors. *Cronic*, 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26; *Strickland*, 466 U.S. at 693–96, 104 S.Ct. at 2067–68. May invokes the first kind of violation, arguing that the structure of the Texas sentencing statute so forced his attorney's tactical decision on whether to present mitigating evidence as to result in a constructive denial of the effective assistance the Sixth Amendment contemplates.

The Court has found constructive denials of counsel only under a few limited circumstances. In *Brooks*, the case on which May primarily relies, the Court struck down a Tennessee statute requiring that a criminal defendant testify before any other defense testimony was heard. The statute "restrict[ed] the defense—particularly counsel—in the planning of its case" and created as a penalty for not testifying first the inability to testify at all "even though as a matter of professional judgment [the] lawyer might want to call [the defendant] later in the trial." 406 U.S. at 612, 92 S.Ct. at 1895. Thus, the accused was deprived of the "guiding hand of counsel," *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932), by a statute that explicitly dictated how the lawyer was to conduct the defense. Similarly, in *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), a statute allowing the judge in a bench trial to dispense with the defense's summation interfered with "a basic element of the adversary factfinding process in a criminal trial." *Id.* at 858, 95 S.Ct. at 2553. The Court characterized the earlier holdings that formed the basis for *Herring* as standing for the principle that "[t]he right to the assistance of counsel has

... been given a meaning that ensures to the defense in a criminal trial the opportunity to *participate* fully and fairly in the adversary factfinding process." *Id.* (emphasis added). To effectuate this guarantee of full defense participation, the state may place "no restrictions upon the *function* of counsel in defending a criminal prosecution...." *Id.* (emphasis added). We read these cases as pointing to a constructive denial of counsel only where a government rule affirmatively forces counsel to make a choice he or she might not otherwise make in the context of a particular case. The Court's restatement of the principle of constructive denial of counsel in *Cronic* and *Strickland* confirms this reading: in *Cronic* the Court characterized this branch of Sixth Amendment violations as arising when counsel is "prevented from assisting the accused during a critical stage of the proceeding," *id.* 466 U.S. at 659 n. 25, 104 S.Ct. at 2047 n. 25, while in *Strickland* the Court referred to government "interfere[nce] in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Id.* at 686, 104 S.Ct. at 2063. We do not believe the Texas sentencing scheme interfered with counsel's decisions in the manner contemplated by these cases.

■ While the operation of the Texas capital sentencing scheme at the time of May's trial may have caused counsel to make tactical decisions that counsel might not otherwise have made, we do not think that this rose to the level of direct government interference with defense counsel's ability to conduct the defense that was involved in *Brooks* and *Herring*. Every substantive criminal statute and death penalty statute contains certain elements the finding of which are required for a verdict of guilt or a sentence of death, as the case may be. Counsel's tactical decisions about what kind of evidence to present are always channelled by the requirements of the statute under which the state proceeds. Were we to conclude that the rule of *Brooks* and *Herring* is triggered by statutes that compel tactical decisions about what kind of evidence to present, that rule

would be virtually unlimited and would convert every criminal statute and capital sentencing scheme into a predicate for a Sixth Amendment claim for ineffective assistance of counsel. There is simply no indication that the kind of tactical decisions allegedly made by May's counsel in this case amount to the kind of government interference with counsel's conduct of the defense contemplated by *Brooks, Herring, Strickland* and *Cronic.* As distinguished from the situation in *Brooks* and *Herring,* the way in which May's counsel conducted the defense was not directly addressed by Texas law. Texas law did not prevent counsel from presenting mitigating evidence. *See Burns v. State,* 761 S.W.2d 353, 356–59 (Tex.Crim.App.1988); *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985). Indeed, the facial validity of the Texas statute was upheld upon the express understanding that the special issues had been interpreted to allow the presentation of mitigating evidence. *Jurek v. Texas,* 428 U.S. 262, 272, 96 S.Ct. 2950, 2956, 49 L.Ed.2d 929 (1976); *see also Franklin v. Lynaugh,* 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988) (plurality).

The focal point of May's present claim is his inability to present mitigating evidence to the jury. In the appeal from the denial of May's first federal habeas petition, we considered and rejected the possibility that this inability violated the Eighth Amendment. His present claim amounts to no more than his prior Eighth Amendment claim, driven by exactly the same concerns but dressed in Sixth Amendment garb.

### C.  *Treatment of a Successive Claim*

█ We construe the present petition as merely repeating the Eighth Amendment claim May litigated and lost in the first round of federal habeas; our analysis indicates that May's presentation of a Sixth Amendment violation raises no legal question subject to debate. When a habeas petitioner raises a claim already determined in a previous petition, the court may dismiss under Rule 9(b) of the Rules Governing § 2254 Cases[4] if the prisoner cannot establish an adequate justification for filing a repetitive petition. *Schouest v. Whitley,* 927 F.2d 205, 207 (5th Cir.1991). May has not presented us with any justification for filing this repetitive petition.

### III.  SUPPLEMENTAL MOTION

█ Also pending before this court is a supplemental emergency motion for "appropriate relief" or, in the alternative, an original petition for a writ of habeas corpus to allow consideration of newly discovered evidence showing that May is innocent and that his execution would constitute a miscarriage of justice. Appended to the motion is an affidavit of Richard A. Miles, May's accomplice in the murder and robbery at issue in this case. In his affidavit, Miles confirms that he was present at the offense and participated in it, but states that he did not shoot anyone. Miles states, however, that his testimony at trial concerning May's involvement in the offense was not true. According to Miles's affidavit, May "was not present, nor did he participate in the offense in any manner." Miles claims that he was induced to testify falsely at the trial because of improper pressure from the police.

The alleged constitutional violation which appears to underlie the late-filed motion is not the subject of any petition for habeas relief presently pending in the state courts or in the federal district court. The claim has not been exhausted nor is it a proper subject for the exercise of our appellate jurisdiction. Insofar as our original jurisdiction is invoked, Fed.R.App.P. 22(a) provides that if an application for a writ of habeas corpus is made to a circuit judge, the application ordinarily will be transferred to the appropriate district court. In this case, we think that a transfer of May's petition for habeas corpus relief to the federal district court would be unwise. We have been advised that May intends to file a petition for habeas relief in the state trial

---

4. Rule 9(b) provides, in pertinent part:
    Successive petitions. A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits....

court shortly. Texas has developed a "rule of habeas abstention," that is,

whenever a petitioner seeks a writ of habeas corpus in state court, if the state court determines that a federal habeas proceeding concerning the "same matter" or seeking the same relief is presently pending, the state court may not consider the merits of the petition but must dismiss it.

*Carter v. Estelle,* 677 F.2d 427, 434–36 (5th Cir.1982), *cert. denied,* 460 U.S. 1056, 103 S.Ct. 1508, 75 L.Ed.2d 937 (1983). We do not have any basis for concluding that the rule of habeas abstention is not currently effective in the Texas courts. Under the circumstances, we conclude that the most prudent course of action is to dismiss, without prejudice, May's original petition for a writ of habeas corpus (rather than to transfer it to federal district court) and thereby allow May to pursue the course of action that his counsel proposes to initiate in the state trial court.

## IV. CONCLUSION

For the foregoing reasons, the application for a certificate of probable cause is DENIED; the motion and supplemental emergency motion of the petitioner for a stay of execution are DENIED; and the petitioner's original petition for a writ of habeas corpus is DISMISSED without prejudice.